IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

LESTER FINLEY, JR.,           )
                                )
          Petitioner,        )
                                )
     v.                   )       CV 120-086
                                )     (Formerly CR 119-017)
UNITED STATES OF AMERICA,    )
                                )
          Respondent.     )

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Petitioner, an inmate at Bennettsville Federal Correctional Institution in Bennettsville, South Carolina, has filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

I.     **BACKGROUND**

    A.    **Indictment**

On February 6, 2019, the grand jury in the Southern District of Georgia charged Petitioner in a three-count indictment with (1) possession of marijuana and cocaine with intent to distribute; (2) possession of firearms in furtherance of a drug trafficking crime; and (3) possession of firearms by a convicted felon.  United States v. Finley, CR 119-017, doc. no. 1 (S.D. Ga. Feb. 6, 2019) (hereinafter "CR 119-017").  On February 20, 2019, Petitioner pled not guilty to all counts.  Id., doc. no. 7.  Petitioner faced a statutory sentence of not more

than twenty years of imprisonment, enhanced to thirty years for any prior felony drug conviction, on Count One; not less than five years nor more than life imprisonment consecutive to any other sentence on Count Two; and not more than ten years of imprisonment on Count Three.  Id., doc. no. 2.  The Court appointed Henry Nelson Crane, III, to represent Petitioner.  Id., doc. no. 5.

**B.    Guilty Plea**

On May 16, 2019, Petitioner appeared with counsel and pled guilty to the marijuana distribution charge in Count One and the firearm charge in Count Three.  Id., doc. nos. 22-24.  The written plea agreement identified the elements of Count Three as:  "(1) that Defendant knowingly possessed a firearm in or affecting commerce: and (2) that, before possessing the firearm, Defendant had been convicted of a felony, that is, a crime punishable by imprisonment for more than one year."  Id., doc. no. 24, ("Plea Agreement"), p. 2.  In exchange for the guilty plea, the government agreed to dismiss the firearms charge in Count Two, make no objection to a two-point acceptance of responsibility reduction, and move for an additional one-point reduction if Petitioner's offense level was sixteen or greater prior to the acceptance of responsibility reduction.  Id. at 4.

The Plea Agreement contained the following factual basis for Petitioner's guilty plea to Count Three:

> On or about May 17, 2018, in Richmond County, within the Southern District of Georgia, the defendant, **LESTER FINLEY, JR.**, having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess, in and affecting commerce, firearms, to wit, a Ruger .40 caliber handgun, a Titan Tiger .38 special handgun, a Glock 9 mm handgun, and a Heckler and Koch .40 caliber handgun, which had been transported in interstate and foreign commerce.

> All in violation of Title 18, United States Code, Section 922(g)(1).

2

Id. at 2.  With his signature on the Plea Agreement, Petitioner "stipulate[d] that the factual basis set out therein is true and accurate in every respect."  Id. at 11.

By signing the Plea Agreement, Petitioner also "entirely waive[d] his right to a direct appeal of his conviction and sentence on any ground" unless the Court (1) sentenced him above the statutory maximum; (2) sentenced him above the advisory Sentencing Guidelines range; or (3) the government appealed the sentence.  Id. at 7.  Absent one of those three conditions, "[Petitioner] explicitly and irrevocably instruct[ed] his attorney not to file an appeal."  Id.  Further, Petitioner waived his right to collaterally attack his conviction and sentence on any ground other than ineffective assistance of counsel.  Id. at 7-8.  By signing the Plea Agreement, Petitioner additionally attested Mr. Crane had "represented him faithfully, skillfully, and diligently, and [Petitioner] is completely satisfied with the legal advice given and the work performed by his attorney."  Id. at 9.

At the guilty plea hearing, Chief United States District Judge J. Randal Hall first confirmed no one had threatened or pressured Petitioner into pleading guilty and that he clearly understood where he was and why he was in court.  Id., doc. no. 42 ("Rule 11 Tr."), pp. 3, 6.  Judge Hall reviewed the charges against Petitioner.  Id. at 6-7, 14.  Petitioner confirmed he had as much time as he needed to go over the charges with Mr. Crane.  Id. at 7.  Petitioner also testified under oath he was satisfied with Mr. Crane's representation, and he had read and reviewed the Plea Agreement with counsel before signing it.  Id. at 7, 9.

Judge Hall explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights.  Id. at 7-9.  Among the rights explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the

government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent.  Id.  Judge Hall also specifically reviewed the appeal and collateral attack waiver provisions of the Plea Agreement.  Id. at 10. Judge Hall confirmed that other than the Plea Agreement, no one on behalf of the government had promised anything to procure the guilty plea.  Id. at 9-10.

Judge Hall reviewed the maximum penalties for Counts One and Three, and Defendant confirmed he understood.  Id. at 11.  Judge Hall also explained that upon Petitioner's conviction, he would lose the right to vote, hold public office, serve on a jury, and own or possess firearms or ammunition.  Id. at 12.  Judge Hall further explained that upon entry of the guilty plea, he would order the preparation of a Presentence Investigation Report ("PSI"), and Petitioner's sentence would be based on the information in the PSI.  Id. at 12-13.  Judge Hall specifically explained the PSI would calculate an advisory Sentencing Guidelines range, but he could sentence Petitioner within the range, below the range, or above the range.  Id. at 13-14.  Petitioner stated he understood the sentencing process described by Judge Hall and no one had promised a particular sentence.  Id. at 14.

Next, Judge Hall heard the factual basis for Petitioner's guilty plea from Ricardo Prince, Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives.  Id. at 15-20.  SA Prince testified Richmond County Sheriff's Office investigators executed search warrants at three residences in Augusta and Hephzibah, Georgia.  Id. at 16-17.  During the month of May 2018, Investigator Conception surveilled Petitioner taking bags to and from a residence located at 2152 Rosier Road, Augusta, Georgia.  Id. at 17.  On May 17, 2018, officers approached Petitioner at 2242 Winston Way, Augusta, Georgia and observed Petitioner take a large plastic bag containing a large amount of marijuana inside the

residence.  Id.  When officers detained Petitioner, he was in possession of $5,514 in cash.  Id.

A search of Petitioner's residence, located at 2152 Rosier Road, revealed a Ruger, Model SR40, firearm; 5.9 grams of suspected powder cocaine; 392.1 grams of suspected marijuana; pills; digital scales; and .223 caliber ammunition and drum designed for an AR-15 rifle.  Id. at 16.  A related search at 2242 Winston Way revealed approximately 1,449 grams of marijuana; a Titan Tiger, .38 special revolver; a Glock, 9-millimeter; and a Heckler and Koch .40 caliber handgun.  Id.  At Petitioner's parents' residence, 2974 Arrowwood Circle, Hephzibah, Georgia, officers found in Petitioner's bedroom a stolen AR-15, .223 rifle.  Id. at 16-17.  Officers determined Petitioner was a convicted felon.  Id. at 19.

Petitioner confirmed to Judge Hall (1) on or about May 17, 2018, in Richmond County, he knowingly and intentionally possessed with intent to distribute marijuana; (2) on the offense date, he was a convicted felon; and (3) he was guilty of, and wanted to plead guilty to, the drug possession and felon in possession charges.  Id. at 20-21.

Judge Hall then summarized the proceedings as follows:

> With the signing of the plea and the entry of that plea into the record, I now find Mr. Finley is competent.  He fully understands the two charges against him.  There is a factual basis supporting his plea of guilty on these two charges.  He knows the statutory punishment that could be imposed, and he knows his jury rights which he has knowingly and voluntarily waived.  I further find that Mr. Finley's decision to plead guilty was voluntary, knowing, and not as a result of any force, pressure, threats or promises other than the promises made by the Government in the Plea Agreement.  Therefore, Mr. Finley's plea is accepted, and I now adjudge him guilty of Count One of the Indictment as to marijuana only and Count Three of the Indictment based upon those pleas.

Id. at 21-22.

## C.    Sentencing

The United States Probation Office prepared a PSI which set Petitioner's Total

Offense Level at twenty-three, Criminal History Category at IV, and guidelines imprisonment range at 70 months to 87 months.  PSI ¶¶ 30, 40, 63.  The base offense level of twenty-two was increased by four points because Petitioner possessed a firearm while also in possession of marijuana, cocaine, and MDMA.  PSI ¶ 22.  The adjusted offense level was reduced by three points for acceptance of responsibility.  PSI ¶¶ 28-29.  Had Petitioner been convicted of the charge in Count Two, dismissed as part of the Plea Agreement, the statutory penalty would have required a mandatory consecutive term of at least five years in prison. PSI ¶ 64.  Neither Petitioner nor the Government filed any objections to the PSI.  PSI Add.

Judge Hall sentenced Petitioner to seventy-eight months of imprisonment, three years of supervised release, a $1,500 fine, and a $200 special assessment.  CR 119-017, doc. no. 29.  Count Two was dismissed and judgment was entered on October 7, 2019.  Id., doc. no. 31.  In keeping with the terms of the Plea Agreement, Petitioner did not file a direct appeal.

**D.      § 2255 Proceedings**

Petitioner filed the instant § 2255 motion to vacate, set aside, or correct his sentence arguing he is entitled to have his felon in possession conviction vacated in light of the decision of the United States Supreme Court in Rehaif v. United States, 139 S. Ct. 2191, 2200 (2019).  (See generally doc. no. 1.)

## II.     DISCUSSION

In Rehaif, the Supreme Court held that in a felon in possession prosecution "under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm."  139 S. Ct. at 2200.  Prior to this 2019 decision, the government was not required "to satisfy a mens rea requirement with respect to the status

6

element of § 922." United States v. Rehaif, 888 F.3d 1138, 1144 (11th Cir. 2018), *rev'd and remanded*, 139 S. Ct. 2191.   The Eleventh Circuit Court of Appeals has determined the Supreme Court's Rehaif decision clarified the requirements for prosecuting an individual under 18 U.S.C. §§ 922(g) and 924(a)(2) but did not announce a new rule of constitutional law.   In re Palacios, 931 F.3d 1314, 1315 (11th Cir. 2019).   The Eleventh Circuit also recognized the Supreme Court did not make the case retroactively applicable to cases on collateral appeal.   Id.

Petitioner argues his guilty plea was not knowing, intelligent, and voluntary because he was not informed of the mens rea element of the firearm offense in Count Three.   (Doc. no. 1, pp. 1-2.)   Respondent argues the § 2255 motion should be denied because (1) the claim is barred by the collateral attack waiver; (2) the non-jurisdictional defect of failing to include the mens rea element in the indictment was waived by entry of a knowing and voluntary guilty plea; (3) the claim is procedurally defaulted; and (4) any error was harmless.   The Court agrees.

### A.   Petitioner's Claim Is Barred by the Valid Collateral Attack Waiver in the Plea Agreement

It is well-settled that waiver of the right to attack a sentence and conviction on direct appeal or by habeas petition is enforceable if the waiver is knowing and voluntary.   United States v. DiFalco, 837 F.3d 1207, 1219-20 (11th Cir. 2016); United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); United States v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993); see also United States v. Warner-Freeman, 270 F. App'x 754, 757 (11th Cir. 2008) (*per curiam*).   Moreover, "[a]n appeal waiver includes the waiver of the right to appeal difficult or debatable legal issues or even blatant error."   United States v. Grinard-Henry, 399

F.3d 1294, 1296 (11th Cir. 2005) (*per curiam*).

"To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." Weaver, 275 F.3d at 1333. If the government meets this burden, then the waiver is valid and enforceable. See United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999); United States v. Benitez-Zapata, 131 F.3d 1444, 1446-47 (11th Cir. 1997).

Here, the Plea Agreement, signed and verified by Petitioner, explicitly set forth he was voluntarily waiving his right to a direct appeal of the convictions and sentence, as well as his right to collaterally attack the same, on any ground other than ineffective assistance of counsel. Plea Agreement, pp. 7-8. None of the exceptions to the waiver apply because Petitioner's sentence did not exceed the statutory maximum or the advisory Guidelines range, and the government did not appeal. Id. at 7. Likewise, the Rehaif claim is not based on a claim of ineffective assistance, and does not fall within the only exception to the collateral attack waiver. Id. at 8. Moreover, Judge Hall reviewed the appeal and collateral attack waiver provision in the Plea Agreement during the change of plea proceedings and confirmed Petitioner understood and agreed to the terms described. Rule 11 Tr. 10.

While Petitioner would have the Court ignore his responses to Judge Hall's questions, "solemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). The record before the Court demonstrates Petitioner's agreement to the

collateral attack waiver was knowing and voluntary, and the <u>Rehaif</u> claim falls within the scope of the waiver.  Therefore, enforcement of this valid collateral attack waiver bars Petitioner's <u>Rehaif</u> claim.  <u>See</u> <u>United States v. Marc</u>, 806 F. App'x 820, 823-24 (11th Cir. 2020) (enforcing knowing and voluntary appeal waiver to bar <u>Rehaif</u> claim).

### B.   Petitioner's Collateral Attack Waiver Is Enforceable Because His Guilty Plea Was Knowing and Voluntary

Having determined Petitioner knowingly and voluntarily waived the right to attack his sentence and conviction on direct appeal or by collateral attack in a § 2255 motion, the Court turns to the knowing and voluntary nature of the guilty plea.  For if a guilty plea is not knowingly and voluntarily entered, that "would in turn mean that a court could not enforce a waiver contained within that plea agreement."  <u>Vaca-Ortiz v. United States</u>, 320 F. Supp. 2d 1362, 1365 (N.D. Ga. 2004) (citing <u>Bushert</u>, 997 F.2d at 1350-51).

### 1.   Standard for Enforceability of Guilty Pleas

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea.  <u>United States v. Broce</u>, 488 U.S. 563, 569 (1989).  In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary.  <u>Boykin v. Alabama</u>, 395 U.S. 238, 242-43 (1969).  The Eleventh Circuit has described the requirements for a valid guilty plea as follows:  "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights.  A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional

sense." <u>United States v. Brown</u>, 117 F.3d 471, 476 (11th Cir. 1997).  A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." <u>Id.</u>  Thus, a defendant must receive "real notice of the true nature of the charged crime." <u>Id.</u>

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." <u>United States v. Moriarty</u>, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (citations omitted).  In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea." <u>Id.</u> at 1020 (quoting <u>United States v. Dominguez Benitez</u>, 542 U.S. 74, 83 (2004)).

### 2. Judge Hall's Colloquy Satisfied the Three Core Principles

Judge Hall reviewed the charges against Petitioner in the indictment.  Rule 11 Tr. 6-7, 11, 14.  Judge Hall also provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights.  <u>Id.</u> at 7-9.  Petitioner testified that other than the promises the government made in the Plea Agreement, no one had made promises to get him to plead guilty, and Judge Hall confirmed Petitioner's decision to plead guilty was not the result of force, pressure, threats or promises other than those in the Plea Agreement.  <u>Id.</u> at 3, 9-10.

Additionally, Judge Hall informed Petitioner of the possible penalties he faced upon conviction, to include up to ten years in prison on Count Three.  Id. at 11.  Finally, Petitioner also testified he was satisfied with the help he received from Mr. Crane.  Id. at 7; see also Plea Agreement, p. 9 ("Defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice given and the work performed by his attorney."); p. 11 ("I have read and carefully reviewed this agreement with my attorney.").

The thorough plea colloquy ensured Petitioner understood both the nature of the charges and the consequences of his guilty plea, and Petitioner was not coerced into pleading guilty.  See Moriarty, 429 F.3d at 1019.  Accordingly, the Court concludes Petitioner entered a knowing and voluntary guilty plea.  Thus, the collateral attack waiver is enforceable and as discussed above, bars Petitioner's Rehaif claim.  Likewise, as discussed below, the valid plea also bars the non-jurisdictional error of failure to include the mens rea element now required for conviction on a § 922(g), felon in possession charge.

C.  **The Rehaif Claim Is a Non-Jurisdictional Error Waived by the Knowing and Voluntary Guilty Plea**

Petitioner claims his guilty plea was not knowing, intelligent, and voluntary because he was not informed of an essential element of the offense of conviction.  (Doc. no. 1, pp. 1-2.)  At every possible juncture in the underlying criminal proceeding, Petitioner confirmed his convicted felon status by (1) admitting he was already a convicted felon when he possessed firearms in May 2018, (Rule 11 Tr. 21); (2) signing the Plea Agreement which stated he was previously convicted of a felony, (CR 119-017, doc. no. 24, p. 2), and (3) raising no objection to the PSI reporting of his criminal history, (PSI ¶¶ 35, 37).

11

Even if the Court were to presume for the sake of argument Petitioner did not know his status as a convicted felon prohibited him from possessing a firearm, failure to include the mens rea element of a § 922(g), felon in possession charge, is a non-jurisdictional defect. See United States v. Moore, 954 F.3d 1322, 1334-35 (11th Cir. 2020); United States v. McLellan, 958 F.3d 1110, 1118 (11th Cir. 2020). Entry of a valid guilty plea waives all non-jurisdictional defects that occurred prior to entry of the plea, which includes omission of an element of offense such as the mens rea element of a felon in possession charge. See United States v. Ward, 796 F. App'x 591, 599 (11th Cir. 2019) (*per curiam*); see also United States v. Brown, 752 F.3d 1344, 1354 (11th Cir. 2014) (holding failure to include mens rea element in indictment was non-jurisdictional defect waived by guilty plea); United States v. Patti, 337 F.3d 1317, 1320 (11th Cir. 2003) ("Generally, a voluntary, unconditional guilty plea waives all nonjurisdictional defects in the proceedings.").

### D. Petitioner Procedurally Defaulted His Rehaif Claim by Failing to Assert it on Direct Appeal

Even if Petitioner's Rehaif claim were not barred by the valid collateral attack waiver and guilty plea, it is procedurally defaulted. A petitioner seeking collateral relief must clear "a significantly higher hurdle than would exist on direct appeal." Brown v. United States, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting United States v. Frady, 456 U.S. 152, 166 (1982)). "Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge." United States v. Montano, 398 F.3d 1276, 1279-80 (11th Cir. 2005) (citing Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994)). "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." Mills, 36 F.3d at 1055. In other words,

Petitioner may not use this collateral attack as "a surrogate for a direct appeal." <u>Lynn v.</u> <u>United States</u>, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted).

The procedural bar to claims which could have been raised on direct appeal, but were not, may be avoided if the petitioner establishes one of two exceptions:  (1) cause for the default and actual prejudice from the alleged error; or (2) a fundamental miscarriage of justice, covering "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Mills</u>, 36 F.3d at 1055-56 (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986)).  "Cause" requires a showing of some external impediment that prevented a claim from previously being raised.  <u>See</u> <u>Weeks v. Jones</u>, 52 F.3d 1559, 1561 (11th Cir. 1995) (citing <u>McCleskey v. Zant</u>, 499 U.S. 467, 497 (1991)).

"[F]utility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998) (citations omitted); <u>see also</u> <u>United States v. Bane</u>, 948 F.3d 1290, 1297 (11th Cir. 2020) ("[A] claim is not novel when counsel made a conscious choice not to pursue the claim on direct appeal because of perceived futility, or when the building blocks of the claim were available to counsel." (citations omitted)); <u>Lynn</u>, 365 F.3d at 1235 ("In procedural default cases, the question is not whether legal developments or new evidence has made a claim easier or better, but whether at the time of the direct appeal the claim was available at all.")

To demonstrate prejudice, Petitioner "must shoulder the burden of showing, not merely that the errors at his trial [or sentencing] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial [or sentencing] with error of constitutional dimensions." <u>Frady</u>, 456 U.S. at 170.  As to the exception for actual innocence, the Supreme Court emphasized, "The miscarriage of justice

exception, we underscore, applies to a <u>severely confined</u> category:  cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'"  <u>McQuiggin v. Perkins</u>, 569 U.S. 383, 394-95 (2013) (emphasis added). Moreover, "'actual innocence' means factual innocence, not mere legal insufficiency." <u>Bousley</u>, 523 U.S. at 623-24 (citation omitted).

Petitioner did not raise his mens rea claim at his change of plea hearing, at his sentencing, or on direct appeal.  Moreover, Petitioner cannot establish cause based on the recent holding in <u>Rehaif</u>, because as explained above, that a claim was previously unacceptable to a court does not satisfy the cause requirement.  <u>Id.</u> at 623.  Additionally, the building blocks for the claim were available.  <u>Bane</u>, 948 F.3d at 1297.  As the Eleventh Circuit has explained, the Supreme Court's <u>Rehaif</u> decision did not announce a new rule of constitutional law but instead clarified the requirements for prosecuting an individual under 18 U.S.C. §§ 922(g) and 924(a)(2).  <u>See</u> <u>In re Palacios</u>, 931 F.3d at 1315.

Petitioner points to nothing that prevented him from raising what may have seemed at the time to be a losing argument.  As a sister circuit aptly explained, "[T]he difficulty in prevailing on a particular argument does not excuse the failure to make it in the first place." <u>Prost v. Anderson</u>, 636 F.3d 578, 592 n.11 (10th Cir. 2011) (Gorsuch, J.).  Indeed, successfully challenging circuit precedent all the way to the Supreme Court is the reward to litigants who "took the trouble to challenge adverse circuit precedent."  <u>Id.</u> at 590-91.[1]  As Petitioner cannot satisfy the cause *and* prejudice standard, his procedural default is not excused.  <u>See</u> <u>Mills</u>, 36 F.3d at 1055.

---

[1]A collateral attack waiver cannot serve as cause to excuse procedural default.  <u>See</u> <u>Lester v. United States</u>, No. 3:17-CR-76-J-32JBT, 3:18-CV-1076-J-32JBT, 2020 WL 1911462, at *4 (M.D. Fla. Apr. 20, 2020).

Nor can Petitioner satisfy the rigorous fundamental miscarriage of justice exception. He presents no evidence, much less new evidence, to suggest no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt had he gone to trial and required the government to prove the mens rea element. See McQuiggin, 569 U.S. at 386. Prior to the offense conduct at issue here, Petitioner accrued a criminal history that included two felony convictions, two prison sentences of three and five years, and two probation sentences of five and seven years. Petitioner admitted he was already a convicted felon when he possessed firearms in May 2018. Petitioner signed the Plea Agreement stating he was a convicted felon, and the PSI detailed Petitioner's prior criminal history, to which he did not object. "It is the law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes." United States v. Wade, 458 F.3d 1273, 1277 (11th Cir. 2006).

Petitioner never objected or otherwise expressed any surprise or confusion over his status as a felon. "Where the record clearly demonstrates that it would be implausible for the defendant to not have been aware of his felony status, a Rehaif error does not affect his substantial rights." McLellan, 958 F.3d at 1119 (citing United States v. Reed, 941 F.3d 1018, 1022 (11th Cir. 2019)); see also Ward, 796 F. App'x at 600-01 (finding prior criminal history can show defendant's knowledge of status as belonging to group prohibited from possessing a firearm). Stated otherwise, a bare Rehaif claim, made in the face of an established criminal history showing a petitioner belongs to the group prohibited from possessing a firearm, does not support an actual innocence claim. See In re Wright, 942 F.3d 1063, 1065 (11th Cir. 2019); Reed, 941 F.3d at 1021-22.

In addition, because Petitioner pleaded guilty in exchange for the government dismissing Count Two, Petitioner must also show actual innocence as to the dismissed firearms charge.  See Bousley, 523 U.S. at 624.  As explained in detail in the PSI, and as explained by SA Prince at the change of plea proceeding, Richmond County investigators found multiple firearms belonging to Petitioner in the same location as the marijuana. Petitioner did not object to the information in the PSI or offered by SA Prince.  Nor does he now offer any evidence regarding actual innocence of the dismissed charge.

In sum, Petitioner procedurally defaulted his Rehaif claim.  See United States v. Sanders, No. 4:14CR81-RH-CAS, 2020 WL 1876335, at *2 (N.D. Fla. Apr. 15, 2020) (rejecting § 2255 Rehaif claim as procedurally defaulted when not raised at trial or on direct appeal and petitioner failed to satisfy cause and prejudice or actual innocence exception).

### E.     Petitioner Is Not Entitled to Relief on the Merits Because Omission of the Mens Rea Element Was Harmless Error

Even if Petitioner's Rehaif claim were not barred by the valid collateral attack waiver, barred by entry of a valid guilty plea, and procedurally defaulted, he is not entitled to relief because the Rehaif error was harmless.  It is long-settled that to obtain collateral relief, Petitioner must identify "a fundamental defect which inherently results in a complete miscarriage of justice, [or is] an omission inconsistent with the rudimentary demands of fair procedure."  Hill v. United States, 368 U.S. 424, 428 (1962).  On collateral review, relief cannot be granted unless there is "grave doubt" that the error "had substantial and injurious effect or influence" on the outcome of the underlying proceedings.  Al-Amin v. Warden Georgia Dep't of Corr., 932 F.3d 1291, 1298 (11th Cir. 2019) (citations omitted), *cert. denied sub nom.* Al-Amin v. Ward, No. 19-573, 2020 WL 1668291 (U.S. Apr. 6, 2020).  The

Eleventh Circuit has explained that when applying the appropriate harmless error analysis under <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637-38 (1993), "[i]f, when all is said and done, the [court's] conviction is sure that the error did not influence, or had but very slight effect, the verdict and the judgment should stand." <u>Ross v. United States</u>, 289 F.3d 677, 683 (11th Cir. 2002) (citations omitted).

Petitioner cannot shoulder his heavy burden because the uncontroverted record establishes Petitioner knew he was a felon when he possessed the firearms forming the basis of his § 922(g) conviction on Count Three. As discussed in Part II(D), *supra*, Petitioner had twice been convicted of felonies resulting in prison sentences of three and five years, respectively. PSI ¶¶ 35, 37. Petitioner did not object to any of the information in the PSI, nor did he object when he signed the Plea Agreement listing his prior felonies, or when SA Prince testified Petitioner was a convicted felon. Petitioner also admitted he was guilty of being a convicted felon when he possessed firearms in May 2018. Rule 11 Tr. 21.

That Petitioner had two prior felony convictions and sentences imposed that required him to serve more than one year in prison shows he knew his status as a felon prior to his federal offense date. <u>See</u> <u>Reed</u>, 941 F.3d at 1022 (citing eight prior felonies, stipulation to felony conviction prior to offense date, and trial testimony to show knowledge of status as felon); <u>United States v. Caldwell</u>, 805 F. App'x 743, 749 (11th Cir. 2020) (*per curiam*) (finding no plain error affecting substantial rights on direct appeal where defendant responded affirmatively to district court questions if he knew what a felony was and if he had previously pled guilty to a felony); <u>United States v. Green</u>, 798 F. App'x 527, 533 (11th Cir. 2020) (*per curiam*) (finding no plain error affecting substantial rights on direct appeal after concluding prior conviction of multiple felonies and serving three-year prison sentence

shows knowledge of status as a felon); <u>United States v. Gilcrest</u>, 792 F. App'x 734, 736 (11th Cir. 2019) (*per curiam*) (finding no plain error affecting substantial rights on direct appeal where defendant had served more than one year in prison multiple times, had a prior felon-in-possession conviction, did not object to portions of PSI recounting prior felony history, and stipulated at trial to being felon at time of offense).

In sum, pursuant to a harmless error analysis, Petitioner has not shown the <u>Rehaif</u> error was "a fundamental defect which inherently result[ed] in a complete miscarriage of justice," and he is not entitled to relief.  See <u>Brecht</u>, 507 U.S. at 634 & n.8.

## III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 1st day of December, 2020, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA